Good afternoon. We have one case for argument this afternoon. Coinbase v. SEC No. 233202. Mr. Scalia, please take a moment, and whenever you're ready, you may begin. Good afternoon. May it please the Court, I'd like to reserve three minutes for rebuttal. The Commission order before this Court is conclusory ipsodixit that is indefensible, measured against cases cited by both parties. The Commission provided zero explanation for rejecting Coinbase's demonstration that the current SEC rules make it unworkable for digital asset companies to register with the SEC and for digital assets to function as designed. This high-handed Commission treatment is especially troubling for two reasons. First, the Commission is prosecuting companies for not doing the very thing that Coinbase said was not possible. The message from the Commission's chair has been, come in and register, or we will vigorously prosecute you. Yet when Coinbase said, please make it possible to register, the Commission had no answer to Coinbase's concerns. Worse yet, now in this Court, it claims that it does not even have to make compliance with its registration requirements possible. So let's talk about what is truly impossible for you. Some of the rules would be expensive, some would be redundant, but what's impossible to comply with? First, with respect to the issuers of the digital assets, the companies that sort of initially create these opportunities, the digital assets themselves are traded 24-7 peer-to-peer. They cannot operate in that manner while they are, for example, custodied. It's the minute that they have to be held by some intermediary, they don't have the functionality for which they are sought by the people who hold them. So that's one point of impossibility. Second, SEC registration rules contemplate a control group that will engage in ongoing oversight of the company, which there's not here, and which will provide occasional updates and the like to the public. But a group like that is not intended to exist long-term for a digital asset. Again, part of the genius of digital assets, the reason they're embraced, is ultimately the purpose that they be fully decentralized without a control group. So that also is a requirement that can't be satisfied. And then as to the exchanges themselves, Coinbase is an exchange. Another example would be the SEC takes the position that you cannot list on an exchange both securities, which they claim some of these digital assets are, and commodities, which they admit Bitcoin and Ether are. And this is really important to understand. Although the SEC's position here is extremely unclear and confusing, even the SEC admits confusion. In fact, it filed a brief just a couple weeks ago before a judge in the District of Columbia in the Binance case where it apologized for the confusion it has created in defining what an asset is. But they take the position you can't have on your exchange both digital asset commodities, like Bitcoin and ETF, and the digital asset securities that they're claiming jurisdiction over. Some stable coins work requires having both to keep a constant value. I'm sorry, excuse me, having both what? The difficulty is that in order to keep a stable coin or something, you need to have the crypto assets being sold off to maintain the Bitcoin or Ethernet. Some of these other crypto assets being sold in order to maintain the value of the stable coin. I think that's correct. Or another example, Your Honor, would be a proof of stake, which is the kind of activity that is engaged in all the time with respect to digital assets, but it doesn't function in a regulated environment. But let me underscore this to Judge Bevis. In their petition, they did not explain how any of this was, in fact, workable. They had an answer that, as I said, fails under any standard articulated by even the cases that they cite. And in their brief, after we explained at length how things were unworkable in our brief, the amici did, even in their brief, they did not come forward and say, here's how the regime works. And, you know, sometimes when agencies, they kind of blow it in their order, as was done here, they will at least give the court reason to believe that they can provide a satisfactory answer if all you do is remand. But they don't do that here. Even in their brief, they don't demonstrate workability. And so what's so troubling here is, again, first, they're demanding registration, but have no answer to the explanation that it's not possible. And then, second, what's disturbing is that they gave this utter non-answer to Coinbase's petition while this court was watching in a mandamus proceeding. They have said that the workability problem was the central issue. In their filing Friday, they said it was the premise of our petition for rulemaking. The fact they did not answer it when this court was watching a mandamus shows that they do not have an answer to the workability problem. And that is why we respectfully submit. How much would they need to say in order to demonstrate workability if we were to agree with your premise that that was necessary? Your Honor, I think that they would need to address the different points regarding workability that we set out. We set out a number of different problems in our petition. They're in our brief. It would be arbitrary and capricious if they did not respond to each of them. Again, they responded to none of them. And, Your Honor, we are not asking for an order from this court that lays out each specific thing that they must say, but the essential request we make is first that the court not merely remand. This case has now made its second trip to this court. In previous cases where this court has ordered a rule, it's in part because the case was there once before and the agencies fell short and this court determined, as it is said, Judge Ambrose, in this court's 2016 Prometheus case, which you authored, that was a case where this court ordered a rule. And in part, the court said, enough is enough. You've been here too many times without explanations. We would submit that. The Supreme Court didn't agree with me, however. Let me take it back to my question, though, about what they need to answer specifically, because the petition that you filed, it has a list of key considerations. It also has a list of questions, key questions for the commission to consider and seek public input on. And I think there are dozens of those. Are responses necessary to each of those questions? We're not expecting that they would answer each of those. However, I think if what they were to issue is a rule that does not satisfactorily contend with these things, that rule is obviously legally vulnerable on its own. But, no, Coinbase provided a framework for what the commission needed to do, which is simple. It has claimed that these assets are securities. It needs to provide a clear indication how it makes that determination so the public can, so the public can conform their conduct and avoid prosecution. And then the second piece, it needs to establish workability. That is almost certainly through amendment to certain rules, but it might also be explaining the issue. It sounds like what you're talking about now is the rulemaking you want them to do, not the response that you want in the letter. Is that right? Your Honor, we are asking now that they be ordered to proceed directly to a rulemaking. We think they have had more than enough opportunity to answer Coinbase's workability concerns. That's an extraordinary remedy. What would we say has to be in such a rule? I think, Your Honor, the single most important thing may simply be the timetable. And in the past when this court has ordered rulemaking, including in the Prometheus case, and I think the Supreme Court's rationale focused on different issues than what prompted the court's schedule, but this court has previously either set schedules or had the parties negotiate a schedule with the court mediator. I think a schedule, you know, and then addressing the two central issues that Coinbase raised. They claim these are securities, define how they draw that line, and then second the workability things. That's what we're seeking. We're not asking this court to write the rule, to dictate the contents of it. We're asking the court to. The problem you run into is like a Chenery and Bell aerospace. They have a tremendous amount of discretion in terms of which way to proceed. One could make an argument that, look, let them do what, if they choose the adjudicatory function, do that, and then raise as a defense the things that you want to bring up, and we'll proceed maybe a little more incrementally than we thought. But in this area, which is, you know, since 2008, 2009, it is so new. I can see why a lot of regulators or people considering regulation are saying we better go slow on this one. This is a new world. Your Honor, I do recognize that whether to proceed by rule or adjudication is often an area for deference. However, the Supreme Court has laid out the circumstances where rulemaking is more appropriate. We think they fit here. More importantly is, Your Honor, respectfully, they're not going slow. That's the problem. It's really such extraordinarily oppressive government behavior for the chairman of this very powerful enforcement agency to be demanding come in and register or I will prosecute you. They have brought dozens of cases. They have approximately 50 people working on these cases. And yet when the industry says we can't register, they say, well, we don't even have to make that possible. The SEC judge, having made registration a priority itself, needs to address immediately the fact that registration is not possible. Put differently, it's not the industry that is thrusting this priority on the agency. It's the agency that seized it. In 2021, the chairman of the agency said that crypto exchanges, quote, have no market regulator, end quote. He was saying that Coinbase as a public company was not regulated by the SEC. He was saying that most or virtually all cryptocurrencies are not regulated by the SEC. But since then, they have completely flipped the script. They are aggressively attacking these companies. And when told that the regime is unworkable, you know, I mentioned that in their brief, they don't address our workability concerns, the points, Judge Bibas, that you were pressing me on. They say two things with respect to workability. They say, first of all, that it just doesn't even matter whether the public can comply with their rule. That is so arbitrary. When they are demanding compliance, they can't then slough it off of their own agenda. Where are you getting that? I don't have a page site for you, Your Honor. I could provide one on rebuttal. But they say repeatedly in their brief one of their major. Okay, not in the letter, not in the denial letter. Yeah, in the denial letter, they had nothing at all. And in this court, they have nothing at all in the workability. I mean, their best arguments, to put air quotes around that, are first, we don't have to make our rules workable. And the other very Orwellian statement they make, again, this is a powerful enforcement agency, they have said our rules are working because we are bringing enforcement cases. Well, I like the piece where they say, you know, we have other priorities, and this would significantly constrain our priorities. And, you know, they do have deference to decide where their priorities lie and to work accordingly. So how do we balance your concern about the workability with the discretion with priorities? Your Honor, when you compare this denial with the denials even in the cases they cite, like the flyers rights case which they cite, or also with the international union, it's the UAW case versus the Labor Department about so-called metalworking fluids. There, for virtually entire page, this court described the detail with which the commission had laid out what its other priorities were, how the resources would be taken away from those other priorities, and how complicated this was. The SEC gave none of that. And, again, it's not had an answer. If I could reserve the remainder of my time, I'm certainly happy to. If you have more questions.  Let's add five minutes to the clock, and we'll give five minutes more to the other side, too. What would be, let's say it's an enforcement action, and you bring up as a defense that you may claim, as you see, that this is a security, but this really doesn't fit under Howie, and I'd like to have this litigated throughout. How is that different from what you would seek in connection with rulemaking? They have the, Coinbase has the defenses in enforcement that are available to it, but we, in rulemaking, the SEC has its own set of obligations, and the fact that something might be a defense in enforcement is not a defense for the SEC to simply abandon its own rulemaking obligations, and we're saying that's what they've done. And, you know, particularly when you look at the cases, and there are several of them, where the courts have said when a rule exists, and remember, the SEC has already decided to have rules. Many of the cases where the court doesn't order rulemaking, the agency's position is no rules at all. The SEC here is saying, oh, the rules are already on the books. They're saying use those rules, come and register, or we will enforce you to the hilt. So they've decided to have rules, and there are cases, making clear, including the horse protection case, the Alliance for Cannabis Therapeutics case, where the D.C. Circuit, for example, has said when you are shown that your existing rules rest on a mistake, and particularly once you're shown that compliance is impossible, the courts have said that sounds an alarm. It's especially troubling. The D.C. Circuit said that impossibility of compliance is per force unreasonable, and we're saying there's an impossibility of compliance here. And, you know, if I could just mention one other case that we cite, because, you know, it's a bit of what's going on here. It's the United States v. Dalton case, the Tenth Circuit case, an enforcement action against somebody for not registering a machine gun. And the Tenth Circuit said, well, you can't bring this case. It's impossible to register machine guns. The registration laws don't allow it. This is a due process problem. This is what we have here, Your Honor. We've got a powerful enforcement agency prosecuting dozens of companies, seeking to recover hundreds of millions of dollars, and yet has no answer to the point made time and again that compliance, that very compliance is demanding is impossible. Is that due process argument before us? We are not asserting a due process defense, but I use that case to illustrate the utter impropriety of an agency prosecuting what is impossible. Where here it has the opportunity, the ability to fix its rules, yet has no answer when the errors are pointed out. Thank you. If you did propose rulemaking, wouldn't the next step from your side or others in the crypto area be a suit for arguing that the proposed rulemaking simply doesn't work in this area? So it would be a pre-enforcement action. And this could still be tied up for a long time, would it not? That is not necessarily the next step, Your Honor. If they were to adopt a clear, satisfactory rule, then there would not be litigation. But you're right. This could take time to resolve. That's why we think it's so important, especially given the enforcement actions and that they are demanding registration. That's why we think it's so important that they be ordered to proceed with rulemaking. If I could reserve the remainder of my time. Yes. Mr. Hill, take a moment. Let us know whenever you're ready. Good afternoon. Ezekiel Hill for the Securities and Exchange Commission. May it please the Court. Coinbase challenges the denial of its rulemaking petition that sought to replace the existing regulatory framework with a new regulatory framework for digital asset securities. Coinbase asked this Court to order the Commission to undertake the requested rulemaking despite the Commission's denial. But this case does not present the rare circumstances that could potentially merit such an extraordinary remedy. Moreover, Coinbase's request that this Court remand to the Commission for further explanation of the denial is also without merit. Can maybe we start where Mr. Scalia spent a good portion of his argument? Is that the reasons given, they don't have to be a lot. But they're so sparse here that, as Bell Aerospace says, there can be some cases where it just doesn't tell us enough. And the D.C. Circuit is saying in Flyers Rights that when an agency denies a petition for rulemaking, the record can be slim, but it can't be vacuous. And there's an argument here that this is pretty darn close to vacuous. You want to address that? Yes, thank you, Your Honor. I'm happy to begin with the Flyer Rights case because I think it's actually quite instructive to the question before the Court here. And if you'll indulge me for a minute, the Department of Transportation had a rulemaking petition before it for rules to provide passengers with information about compensation they were entitled to in the case of a flight delay. And the petition argued that there was widespread consumer confusion about when passengers could get compensation. The Department's relevant response in its entirety was there is insufficient evidence of consumer confusion that would warrant rulemaking on this issue. And the D.C. Circuit explained that that sufficed because while the petition had submitted, presented some evidence of consumer confusion, determining whether that quantum of evidence warranted rulemaking fell within the agency's discretion. But beyond the Flyers Rights, I think there is, there's certainly, this is not the longest document the Commission's ever produced, but there's a lot to it. And I think it's worth marching through what this says. So first of all, the Commission begins by explaining that it disagrees with the premise of the petition that the existing framework is workable for digital asset securities. Let's talk about what's workable. Exactly. A broker-dealer must take physical possession of the security the broker-dealer is selling, correct? In certain circumstances, but I'm happy to address how the Commission... A broker-dealer must take physical possession of the security the broker-dealer is selling, correct?  And a clearinghouse may not take physical possession of a security, correct? Correct. So what is, how does Coinbase know what it is to take physical possession or not take physical possession of a cryptocurrency? How do they know that? Have you taken a position on what amounts to taking physical possession of a cryptocurrency? Yes, Your Honor. So I direct Your Honor to the special purpose broker-dealer release, which is in the first footnote, or first footnote on the second page of the denial. And that is a, I think that speaks to a lot of the issues that we've discussed today. In that case, the Commission issued this release, which does a few things. One, it recognizes that digital asset securities may pose special issues with respect to custody, as Your Honor pointed out. And it requests comments from the public at large, including industry participants, to explain what steps the Commission might take going forward in the regulatory capacity. But you've not made a rule. You've not made anything that's subject to challenge in court, anything like that. The second half of that release, Your Honor, creates a period of time in which the Commission indicated it will not bring an enforcement action against someone custodying digital assets who complies with guidance provided in that release. That basically ties in with Mr. Scalia's other argument that maybe rulemaking should be the way here. If you have to have possession, and there's nothing that even allows you to do what you do in Article 8 of the UCC and have a financial intermediary, there isn't the equivalent of a financial intermediary here that I know of. How do you get around that type of issue without examining it in rulemaking? Well, Your Honor, first of all, I think there's very rare circumstances in which the Commission is obligated to engage in rulemaking, aside from a directive from Congress, which is absent here. But I'd like to get to that issue that Mr. Scalia was discussing about what's possible versus what's impossible. There are some cryptoassets that are like money, all right? And I think the one thing the SEC has been consistent on is that Bitcoin, it has not attempted to regulate Bitcoin. It treats Bitcoin like it's currency outside of your jurisdiction. I'm not aware of the Commission's statement about the status of Bitcoin as a whole. I would point out, though, a digital asset doesn't necessarily always constitute part of an investment contract. The question here about the applicability of securities laws is whether the digital asset is the subject of an investment contract, being a transaction contractor scheme, just like in Howey, for example, and Orange Grove is not always a security. You want to apply the Howey four-factor test. But Howey asks, among other things, whether it's for the, you know, do the, you know, investment or labors of another. And so if something is simply a currency, then it wouldn't be covered under Howey. If it works the way the currency works. So the point of stablecoins is that a stablecoin is supposed to maintain a same value and not be an investment that goes up or down. But some stablecoins have to be backed by a cryptoasset that is designed to go up or down. And your rules say that the same platform may not carry both a security and a non-security, correct? I'm not sure of a specific rule that makes that statement. You've not taken the enforcement position consistently that it is a violation for a security platform, and broker-dealers had to deal in securities and non-securities at the same time. I think the point you're on is what's, and I think this is the point you're getting to, is what's, whether the rules are possible to comply with. Right. And I'd like to address that point, if I may. So if the product is a combination security and non-security, you cannot comply with both of them in front of the SEC. So if I could deal with the concept of compliance generally or impossibility. So Coinbase's argument, as I understand it, is that rulemaking is required because the existing regulatory framework is premised on compliance being possible and, two, compliance is impossible. And I think Coinbase is wrong on both those points. The securities framework is not premised on compliance being possible. It balances a number of interests, including investor protection, fair and efficient markets, capital formation. And not everybody who comes and wants to participate in a securities marketplace is able to do what they want to do. That's not a unique issue to digital asset securities. There are certainly people in the realm of traditional securities who want to engage in some practice that doesn't comply with congressional statutes or the Commission's regulations. And it's also, though, if you want to just focus on digital asset securities, it's not the case that compliance is impossible. First of all, beyond digital assets, there's many folks who are complying with the federal securities laws. The fact that if Coinbase wants to arrange its business in a way that does not comply with the existing regulatory framework, that does not establish a right to have the framework adopted to meet their business practice. But what Coinbase would like to know, okay, we're dealing with some things. Maybe they're commodities. Maybe they're like bank accounts, et cetera. And yet you won't lay down clear markers on what is or isn't. You've got a temporary physical possession rule, but there's this broader issue. And it does seem, I mean, it is true that this case is not directly about due process, but there are some serious notice concerns with we might hit you with serious civil penalties, but we won't tell you what will trigger the civil penalties, even with a Howey test that's designed for a class of physical assets that are designed to go up and down. There are serious problems that you're not just seeking to make people comply. You're seeking to penalize people who don't comply with things they don't know. Well, Your Honor, I think if you look to the, for example, the Coinbase enforcement action, if you looked at what charges the commission has alleged against Coinbase there, they're violations of the federal securities laws that have existed since 1933 or 1934. The question of Howey, the Supreme Court in Howey defined the term investment contract as it appears in the federal securities laws. And the commission's enforcement actions seek to apply that definition. And that's what every court has done in these enforcement actions is apply Howey. Should Coinbase be confused by the fact that different chairs of the SEC have taken markedly different positions on what is or isn't covered? Yes, Your Honor. The statement by the chair is not a statement by the commission or the commission's position. The commission is a five-member body, and its position was reflected dating back to 2017. In the Dow report, the commission explained to the public at large that digital asset securities could be subject to the federal securities laws, advised compliance by issuers and intermediaries, and said what matters is the application of Howey. And since 2017, the commission has consistently taken the position that whether digital asset securities are subject to the federal securities laws turns on Howey. And Howey is the test, as Coinbase's rulemaking petition acknowledges, Howey is the test the Supreme Court put in place, and that is the test that the commission follows. And if you look to the enforcement actions we cite in our brief in which many participants in the industry, including Coinbase, have challenged things such as fair notice, as Judge Ambrose alluded to before, courts have concluded that industry participants were put on fair notice dating back to at least the Dow report in 2017. How are decentralized crypto assets supposed to come together and make disclosures and know if they've got inside information? I mean, the whole premise of these rules is that there's a centralized exchange that has information that can make these kinds of disclosures. So what's that supposed to mean for stuff that works on a blockchain? Well, yes, Sean. With respect to a decentralized organization, the Dow report actually dealt with that issue specifically. So in 2017. So you've cited a rule here, sorry, a report here. You cited some temporary guidance there, solicited it. You haven't given anything that they can rely on. If they get, you know, are these some safe harbors that are going to protect Coinbase? I don't think there's any question, Your Honor, as to what test applies. I think Coinbase would agree that the Howey test applies as to whether digital assets are subject to the federal securities laws as part of an investment contract. So there's no question as to what the test is. But you won't even tell us how the Howey test applies to Bitcoin or Ether. I mean, those have been around for a long time, but you won't take a position in front of us as to whether they're safe if they deal or don't deal in Bitcoin and Ether. I would say that there's many. I believe the Coinbase enforcement action decision said there are 25,000 different digital assets. And Bitcoin has been around for a long time, and you still won't take a position in front of us. The commission has not taken a position on whether – I think you're asking whether Bitcoin in every instance is subject to the federal securities laws as part of an investment contract. And what I hope I've explained to you is there's not an answer to that question, but what there is an answer to is under Howey. Not, you know, the Orange Girls are not always – We won't tell you the answer until we prosecute you. We're not prosecuting. We've just come after you for civil penalties. Well, sir, I don't dispute your honor. If there was an issue in an enforcement action as to fair notice, that would be a defense that could be raised. And I believe Coinbase raised that defense in the enforcement action that it faced. As it turned out, the judge rejected that, as has every judge that has heard a fair notice defense in a digital asset security enforcement action. If you have something in 2017 that says we may – this may be a security, and here we are seven years later with a bunch of enforcement actions claiming somehow that they're a security, but there's a whole lot of questions in this unique area that's only been with us for about 16 years, that why wouldn't that argue for an across-the-board look with all kinds of people weighing in and ultimately having rulemaking? I mean, just to finish the thought, usually you can do things incrementally, and maybe that's the argument against rulemaking. We've got to proceed step by step. But it almost looks as if, to an outside observer, as if you're going after the platforms in a way that will crush the industry without really getting into rulemaking. And Your Honor is referring to rulemaking that would define what digital asset security – what digital asset is a security? So I think, first of all, my response would be that what is a security was defined by the Supreme Court in Howey. And that's what's – I get it. Things have changed, and maybe the Supreme Court needs – you know, we'll look at this again, but maybe the Supreme Court is hoping that there will be rulemaking that will look at – explore this from A to Z, rather than having a discrete enforcement action, so that in this almost all-encompassing area outside the monetary system, the usual monetary system, we have something that's coherent and works and can be regulated. Your Honor, I think the other piece of that is that the digital asset is not the security. It's – the digital asset can be the subject of an investment contract. Just as in – and I know I've talked a lot about Howey, but Howey didn't say that every citrus grove is a security. It said in these specific facts and circumstances, this interest that was purchased in Orange Grove is an investment contract, is a security. And so it's possible that a digital asset could be offered and sold in many different ways. And some of those ways could be an investment contract under Howey, and some of those may not be an investment contract under Howey. And, in fact, there's, for example, staff no-action letters from Commission staff about particular digital assets, concluding that they are not subject to the federal securities laws. Anything else? All right. Thank you, Mr. Hill. Thank you. Actually, if I – No, one more question. Sorry. I apologize. We talked about workability, but in your December 15 letter last year saying we're going to deny rulemaking, which took quite some time to get to, it's one paragraph. And the first paragraph we talked about it disagrees with your assertion that it's unworkable. The second reason, I guess, the SEC's consideration of whether and how, and if so how, to alter the existing regulatory regime may be informed by, among other things, data and information provided by numerous undertakings directly or indirectly relating to cryptoasset securities that the Commission is currently pursuing. I guess it means we're looking at other things. That's a few words that try to encapsulate a lot of words there, but I'm not quite sure what that's saying. You can come back to that. And the third one is we are engaged in many undertakings that relate to regulatory priorities extending well beyond cryptoasset securities. In other words, we have other priorities. And, in effect, they are higher priorities. But don't you have to tell us, even though you list them, why they are higher priorities or why these, what you're doing in terms of getting additional data and information is or is not working and rulemaking would not be helpful? I read that paragraph, and it's one paragraph in the December 15 letter, and I don't really understand why it is that you're denying rulemaking, even though I realize you don't have to give a whole lot. It's a brief reasoning. But I don't see the reasoning. Yes, Your Honor, if I may address that. Absolutely. I agree with you. There's not many words on this piece of paper. I do think the footnotes here, though, which refer to six different undertakings by the Commission, do a lot of the work, and I'd like to explain that. So the Commission pointed to the regulatory initiatives in footnote three because those address digital asset securities within the existing regulatory framework. They explain the Commission's disagreement with the rulemaking petition's premise. They demonstrate that the Commission is fine-tuning existing framework as applied to digital asset securities, and that's the special purpose broker-dealer release in particular I alluded to. And they also demonstrate that the Commission is undertaking efforts that will provide it with experience and information regarding potential future alterations to the regulatory framework. And finally, what that footnote says, there's no parenthetical for explaining exactly what's being looked at. Let's just take the first one. Custody of digital asset securities by special purpose broker-dealers. Okay? Yes, Your Honor. So that is an example of an existing regulatory undertaking that related to crypto or digital assets that the Commission is undertaking that will inform its efforts going forward. And it also demonstrates that undertaking in particular demonstrates the choice the Commission made reflected in the first sentence Your Honor alluded to, that is the Commission is going to proceed within the existing regulatory framework. That was the decision made. And this demonstrates that choice, and as I alluded to before, this was to collect information from market participants and also creating this pathway for five years to allow an alternative route to complying with the customer protection rule for those custodying digital assets. It seems as if when SEC officials are speaking, let's say not so much in a public function, but giving their views as to what is the lay of the land in this particular area, they give a lot more reasoning than I see in this one paragraph. Well, Your Honor, I guess one observation on that is this is the statement by the majority of a five-member Commission versus what one member of that Commission might be able to say in their individual capacity. I'd also just to your point a moment ago. What do you think the dividing line should be? And I think Judge Freeman, in effect, asked the same question earlier. What is, when do you go from not enough to enough reasoning? Keeping in mind that I agree with you, it can be brief. Yes, Your Honor. So I think the critical piece reflected in this court's case in the D.C. Circuit is whether there's enough to understand why the agency did what it did. And I think here there's a number of different reasons that could stand on their own but also stand together to explain. You don't have the time to do this, but you have time to bring 80 enforcement actions against cryptocurrency people. So it's not that the agency isn't interested in the area. It's just interested in picking off a lot of individual ones without giving higher-level guidance. I would get it if this were the first or the second enforcement action, but we're way down the road here. Your Honor, I don't believe this denial is speaking to prioritizing enforcement actions over regulatory undertakings. In fact, I don't think it says anything at all about enforcement actions. And I think when the commission's pointing to we have other priorities we're going to pursue, if you look at, for example, footnote 4, it's referring to regulatory undertakings, not enforcement actions. All right. Thank you, Mr. Hill. Thank you. Thank you. Mr. Scalia, I think you reserved five minutes. With respect to questions that Judge Amber, among others, asked about how much does need to be in an agency answer, counsel at the SEC cited the Flyers' Rights case. Flyers' Rights shows that what they did here was insufficient. If you look at page 1363 of Flyers' Rights, you will see that, in that case, the agency actually talked about evidence in the record. You said 1363. It's page 1363 of Flyers' Rights. That's correct. I have 564 F-3rd, 738. Maybe are you looking at the district court opinion? I'm looking at 957 F-3rd, 1359. I've got 864 F-3rd. And, Judge Amber, what they did there was they said that we've actually found evidence that Flyers do know of their rights. They said we've looked at contracts in the industry. Flyers are being told of their rights by the airlines. And they said we've got an ongoing rulemaking about this specific issue, getting information to Flyers. This case pales compared to that. Or another example is, and I mentioned it earlier, the International Union case, the machine working fluids case in this court. At page 255, this court talked about the detail that was in, I believe, an affidavit by the head of OSHA. And if you compare the detail there, including on such issues as other agency priorities, why this particular task was so hard, much more in that case as well. The Council of the FCC has had no response to our point about this class of cases that recognizes that when you have rules, and those rules are shown for some reason to no longer be properly grounded on the premises in which they were adopted, that, the courts have said, is something that springs out and calls for being addressed. And then the courts have said, particularly when we come to impossibility, that is perforce unreasonable in a rule. What's so extraordinary here is on top of all of that, we don't just have impossibility, we have enforcement. And so, as I said, it's the SEC that has claimed that it has acted by rules. It has said that the rules are already there, comply, and it has made a huge priority of registration, enforcing so many companies that can't. So it has made it a priority, and yet you've heard no answers, even now, under pressing by this court, no answers even now on workability. And something else that is just so extraordinary, the agency here is essentially disavowing an ability to oversee the agency it claims authority over. If they can't register, how can they be supervised? And if I could wrap up by just saying the following. I leave this court understanding the SEC's views on these topics even less than when I entered. Because I thought if one thing was clear, it was that Bitcoin and Ether were being recognized by the SEC as not securities. But you've heard the SEC refuse to answer that question, just as it refused to answer the question about workability. That is a problem for the industry. And one difference, and it's a problem for the court, the difference is that the industry is forced to comply. It must comply. It will be prosecuted. And yet it can't know how to comply. It can't even ascertain what the law is because the SEC keeps changing it even today. This court, though, can do something about it. And that's something, again, has to be more than sending it back to this agency so they can delay and not act even more while they prosecute companies. And that's why we ask that the court direct them to conduct rulemaking. Thank you.  We thank both parties for their excellent and very helpful briefing and oral argument. We'll take the matter under advisement. We ask that both parties work together to prepare a transcript and split the cost.